UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERNESTO VILLAFLOR,<br><br>Plaintiff,<br><br>v.<br><br>U.S. POSTAL SERVICE; MEGAN BRENNAN, POSTMASTER GENERAL; YUN HEE LEE; RON HARRELL, JULIO RODRIGUEZ,<br><br>Defendants. | Case No. C16-1757RSM<br><br>CORRECTED ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Defendant Megan Brennan's Motion for Summary Judgment. Dkt. #30. Plaintiff Ernesto Villaflor opposes this Motion. Dkt. #35. For the reasons stated below, the Court GRANTS Defendant's Motion and DISMISSES this case.

## II. BACKGROUND

Plaintiff Ernesto Villaflor is currently employed as a mail handler of the United States Postal Service in Seattle, a position he has held for over 17 years. *See* Dkt. #31-1 ("Villaflor Dep.") at 9:24-10:10. Mr. Villaflor is male, over 60 years of age, and of Filipino and Puerto Rican descent. *See* Dkt. #1 at ¶ 20. He has a shoulder injury necessitating modified duty status. *See* Dkt. #8 at ¶ 44.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

On November 13, 2013, there was an incident between Mr. Villaflor and his supervisor, Yun Hee Lee. *See* Villaflor Dep. at 67:16–69:8. Mr. Villaflor states that while he was talking with a coworker, Ms. Lee came up and confronted him about interfering with a postal machine using a postal sticker to cover up a sensor. *Id.* Mr. Villaflor testified in deposition that Ms. Lee "slapped the sticker on my face," and when Mr. Villaflor removed the sticker, "she snapped it from my hand and did it a second time." *Id.* Lee has denied that she deliberately touched his face with the sticker, but does not deny that the interaction took place, that she raised her voice, and that through the confrontation, the sticker stuck to his forehead. Dkt #33 ("Lee Decl."), ¶2; Dkt. #33-1 at 2.

The same day as the incident, Mr. Villaflor reported it to Lee's supervisor, Manager Distribution Operation ("MDO") Julio Rodriguez. Villaflor Dep. at 38:8–12 and 39:25–40:5. According to Mr. Villaflor, Julio Rodriguez allegedly stated something to the effect of, "[d]on't tell me you haven't been slapped by a woman before." *Id.* at 83:4–6. Rodriguez called both Plaintiff Villaflor and Lee into his office to learn from each of them what had happened. *Id.* at 39:2–41:7. Plaintiff Villaflor told Rodriguez that there had been witnesses to the incident, and Rodriguez reviewed witness statements. *See id*. 41:8–42:18.

Plaintiff Villaflor testified in deposition that after work he went to "Naval Hospital emergency" because of continuing pain. *Id.* at 69:14–21. He was told to put ice on his face because he had a bruise and was also given Tylenol. *Id.* at 69:22–25. Mr. Villaflor took three or four days of leave. *Id.* at 24:19–23. Also of note, the record shows that from October 2014 through June 2015 Mr. Villaflor went to a social worker with a background in psychological counselling to deal with work-related stress. *See id*. at 55:22–57:2.

Mr. Rodriguez instructed both Plaintiff Villaflor and Lee to have no further contact with each other. *See* Lee Decl. at ¶ 6; Villaflor Dep. at 176:18–25. Rodriguez removed Mr. Villaflor from Lee's supervision. *See* Lee Decl., ¶ 1; Villaflor Dep. at 43:10–17. According to Mr. Villaflor, he was still occasionally required to send schedule changes to Lee. *Id*. at 44:15–18.

Mr. Villaflor later spoke with the Postal Service's Human Resources Department. *See id.* at 84:12–85:9. Human Resources contacted the Postal Inspectors, and within two days of the incident, Postal Inspector Michelle Brooks interviewed Mr. Villaflor. *See id*. at 85:19–25. Inspector Brooks conducted an investigation based on the allegations. *Id.* at 88:14–19.

One month later, Plaintiff Villaflor initiated the EEO process on December 16, 2013. Dkt. #31-2.

On January 2, 2014, a coworker named Sylvia Woods provided a statement to Inspector Brooks. This statement indicated that Ms. Lee, speaking with Ms. Woods, stated that Mr. Villaflor "is no good and all the supervisors are watching him." Dkt. #36-3 at 2.

Postal Inspector Brooks issued an Investigative Memorandum dated February 24, 2014, in which she recommended that: "Postal Management should follow up with all parties and witnesses to determine if action is necessary." Dkt. #33-2 at 6.

On March 14, 2014, Rodriguez talked to Lee a second time about the incident and conducted an investigative interview of Lee. Dkt. #33-3. One week later, on March 21, 2014, MDO Rodriguez then issued Lee a Letter of Warning and also instructed Lee to undergo anger management training. Dkt. #33-4. In her Letter of Warning, Lee was told that: "This letter is also to inform you that you must refrain from the type of behavior listed in the charge above. Failure to correct these deficiencies may result in further disciplinary action, including downgrade or your removal from the Postal Service." *Id*.

Lee never tried to speak with Plaintiff Villaflor after Rodriguez's November 2013 no-contact instruction. *See* Villaflor Dep., 175:15–177:5. Plaintiff has had no further contact with Lee since the November 13, 2013, incident. *Id.* at 42:19–43:12.

Plaintiff Villaflor testified that on March 27, 2014, Supervisor Ronald Harrell, without explanation, instructed him to work only at Stations 1 and 6 within his work area. *Id*. at 96:22–99:22. When asked if this was done "in retaliation for you complaining about Ms. Lee," Mr. Villaflor said "[y]es" and that "I don't have no evidence, but that's what I believe." *Id.* at 99:23–100:4. The only difference in working at Stations 1 and 6 versus other stations was "they just wanted me to work at one and six while everybody else can work anywhere they want;" Mr. Villaflor has admitted there was no financial or economic impact to this change and that the change only lasted two weeks. *Id*. at 100:13–101:12. After two weeks, Mr. Villaflor simply stopped complying with this restriction without telling anyone, and was not disciplined. *Id*. at 101:13–102:18.

On May 16, 2014, Mr. Villaflor's Union issued a Grievance relating to Mr. Villaflor's treatment. Dkt. #36-5. The Union specifically contended that Ms. Lee's actions "embarrassed, humiliated and demoralized" Mr. Villaflor. *Id*. Further, the Union argued that the Post Office did not afford the complaint due diligence and that the prolonged period of time during which nothing was done "mocks past policies." *Id*. The Union suggested that Ms. Lee be ordered to have no contact or supervision over Mr. Villaflor, via written removal notice, until after documented anger management training. *Id*.

Plaintiff Villaflor does not identify any other instances of alleged retaliation.

On November 14, 2016, Plaintiff filed this case. Plaintiff alleges in his Complaint that he was the victim of discrimination when Ms. Lee slapped the postage sticker twice on his face

and called him stupid in front of co-workers on November 13, 2013. *See* Dkt. #1 at ¶¶ 4, 27-28, 46, 50, 53, 56, 59. Plaintiff alleges that he was retaliated against by his supervisors Ron Harrell and Julio Rodriguez when, on March 27, 2014, they ordered him to work at only two stations, when prior to filing an EEO complaint against Lee he had moved freely among various work stations within his work area. *See id*. at ¶¶ 5-6, 36-38, 47, 50, 53, 56, 59, 62.

Plaintiff brought claims for disability discrimination and retaliation pursuant to the Americans with Disability Act ("ADA"), 42 U.S.C. § 12112. *See id.* at ¶¶ 42-47, 60-62. On July 7, 2017, this Court granted Defendants' motion to dismiss these claims. Dkt. #29.

Plaintiff's remaining claims are for race, color, and gender discrimination and retaliation pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1, et seq. ("Title VII"). *Id.* at ¶¶ 48-56, 60-62. Plaintiff also brings an age discrimination claim and retaliation claim pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a ("ADEA"). *Id.* at ¶¶ 57-62.

### III. DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Discrimination Claims**

Title VII prohibits discrimination against an employee or an applicant for employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). The ADEA applies to age related claims. To prevail on a Title VII or ADEA discrimination claim for disparate treatment, a plaintiff must establish a *prima facie* case by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff can establish a *prima facie* case through direct evidence or through circumstantial evidence via the burden shifting framework set forth in *McDonnell Douglas*. *Metayer v Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. To do so, the plaintiff must show that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Hawn v. Executive Mgmt., Inc.*, 615 F.3d

1151, 1156 (9th Cir. 2010). If plaintiff is able to meet this test, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action.

Under Title VII, in order to establish a hostile work environment claim, the plaintiff must show: 1) he was subjected to verbal or physical conduct because of his race, color, or gender; 2) the conduct was unwelcome; and 3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *See, e.g., Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991); *Hosea v. Donley*, 584 Fed. App'x 608, 611 (9th Cir. 2014) (citation omitted); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20 (1993); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004). The courts apply the same analysis under the ADEA. *See, e.g., Bishop v. Donahoe*, 479 Fed. App'x 55, 56 (9th Cir. 2012); *Robinson v. Pierce County*, 539 F.Supp.2d 1316, 1329-30 (W.D. Wash. 2008).

The Court has examined the record in the light most favorable to Plaintiff, but has nevertheless identified several critical problems with Mr. Villaflor's discrimination claims.

First, the Court agrees with Defendant that Mr. Villaflor cannot establish a hostile work environment claim. This case concerns a single incident of head or face slapping followed by separation of the individuals involved. Subsequent events include Mr. Villaflor having to avoid Ms. Lee and the statement attributed to Ms. Lee that Mr. Villaflor was "no good" and being watched by supervisors. Mr. Villaflor struggles to point to conduct that relates to his race, gender, or age; the closest he comes is when Julio Rodriguez stated something to the effect of, "[d]on't tell me you haven't been slapped by a woman before." Villaflor Dep. at 83:4–6. The Court concludes that none of this, separately or together, constitutes sufficiently severe or

pervasive conduct so as to alter the conditions of Plaintiff's employment and create an abusive work environment.

Second, the Court finds that Mr. Villaflor cannot otherwise show discrimination because he cannot show he experienced an adverse employment action. Mr. Villaflor was not transferred out of his position, demoted, suspended, or terminated. His working stations were limited for a short period of time (see Retaliation section below). Mr. Villaflor's unilateral decision to stop following that limitation was not resisted by his supervisor. Mr. Villaflor argues that "[t]he assault in public was, in itself, adverse employment action that embarrassed and humiliated Mr. Villaflor in front of his co-workers…" Dkt. #35 at 10. The assault may have been an adverse *action* occurring during Mr. Villaflor's employment, but it was not an "employment action" as contemplated by this area of the law. Mr. Villaflor also argues that being ordered to avoid contact with Ms. Lee was adverse employment action. *Id*. The Court disagrees; this was a reasonable response from an employer designed to protect Mr. Villaflor from potential harassment, and there is no evidence that it *materially* changed the terms and conditions of his employment. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 53.

Third, even if there had been an adverse employment action, there is no direct evidence of discrimination, and the circumstantial evidence does not give rise to an inference of discrimination. Defendant is correct in noting:

> The only purported evidence of bias offered by Plaintiff Villaflor does not even relate to Lee's conduct at all. Plaintiff Villaflor complains that at some point after the incident with Lee was reported and was being investigated, MDO Rodriguez allegedly downplayed the significance of the incident between Plaintiff and Lee with an alleged comment about being slapped by a woman. *See* Plaintiff's Response, Dkt. No. 35, p. 10; *see also* Defendant's Motion, Dkt. No. 30, p. 3. This alleged comment by Rodriguez has no probative value as to whether Lee's conduct towards Plaintiff Villaflor was based upon any type of discriminatory animus.

Dkt. #38 at 3.

Given the above, Plaintiff cannot bring a claim of discrimination under Title VII or the ADEA.

**C. Retaliation Claim**

Plaintiff can establish a prima facie case of retaliation under Title VII and the ADEA by showing that: 1) he engaged in a protected activity; 2) he suffered an adverse employment action; and 3) there was a causal link between the protected activity and the adverse employment action. *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000); *Bishop*, 479 Fed. App'x at 56. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. at 67. A "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. (citations omitted); *Ray*, 217 F.3d at 1242-43.

Defendant argues Mr. Villaflor cannot establish the second element above because the two-week restriction on where he worked within his work area did not constitute an adverse employment action. Dkt. #30 at 11. Mr. Villaflor "must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (citing *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. at 67; *Ray*, 217 F.3d at 1242-43). Defendants point out that Mr. Villaflor has admitted to not suffering any economic consequences, and that after a couple of weeks, he "simply stopped complying with the Postal Service's instruction, and he was never disciplined or cautioned." *Id*. at 12.

Defendant argues that "if Plaintiff Villaflor was confident enough that he felt he could disobey his employer's instructions and resume working at his prior work stations, then, as a matter of law, his employer's decision to restrict his work areas was not the kind of action that would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*.

In Response, Mr. Villaflor argues that limiting him to working Stations 1 and 6 "was in fact an adverse employment action" because it "ostracized Mr. Villaflor from his co-workers, deprived him of freedom of movement and interaction in an obvious manner, and was so stressful to him that it forced him to seek medical treatment and miss work." Dkt. #35 at 16.

The Court finds that Mr. Villaflor has failed to establish the second element of his *prima facie* case of retaliation as a matter of law. Mr. Villaflor has failed to make a "sufficient showing," *see Celotex*, *supra*, that being limited to working Stations 1 and 6 materially changed the terms and conditions of his employment. Taking the undisputed facts in the light most favorable to Mr. Villaflor, this employment action simply is not adverse in the sense that it would have dissuaded a reasonable employee from making or supporting a charge of discrimination. Defendant is correct to point out the lack of impact this directive had on Mr. Villaflor, who simply stopped following the directive after two weeks. Without an adverse employment action, Mr. Villaflor's retaliation claim fails.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant's Motion for Summary Judgment (Dkt. #30) is GRANTED. Plaintiff's remaining claims are DISMISSED.

2) This case is CLOSED.

DATED this 22 day of May, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE